No. 2575.—Police Jury of West Baton Rouge et al. *v.* J. V. Duralde et al.

| 22 | 107 |
|----|-----|
| 47 | 1163 |

*Stocks pledged to a bank as security for a loan of money constitute a standing acknowledgment of the debt, and prescription is interrupted during the time of the pledge.*

APPEAL from Fifth District Court, parish of West Baton Rouge. *Posey, J. Favrot & Chamberlin, Barrow & Pope* and *S. P. Greves,* for plaintiffs and appellants. *A. Pitot* and *John H. Lamon,* for defendants and appellees.

Wyly, J. Plaintiffs have appealed from a judgment dissolving the injunction sued out by them, as third. possessors, restraining the enforcement of a Citizens' Bank stock note mortgage subscribed by Charles Pipes and wife in 1839.

The injunction was had under articles 739 and 740 C. P. on the ground of prescription of the debt, the plaintiffs alleging that, as third possessors of the mortgaged property, they can plead the prescription of five years in bar of recovery on the notes.

The defendants insist upon the inapplicability of the plea on several grounds, but mainly because the Citizens' Bank held in pledge the certificates of stock belonging to their debtor, Pipes, which was a standing acknowledgment of the debt, interrupting prescription.

To this the plaintiffs reply that, as the certificates of stock were never issued, the maker of the notes could not pledge to the bank that which was never in his possession; and that at the time the pledge was made, which was prior to the act of twelfth of February, 1852, it could not be proved or have effect as to third persons without being in writing and being registered comformably to articles 3125, 3126 C. C., which was not done.

They also say that even though between the pledger and the pledgee there is no necessity for a written deed of pledge, yet, if the contract of pledge ever existed between Pipes and the Citizens' Bank by the delivery of the stock, the effect of the privilege, which said delivery conferred to the bank on the stock pledged, never existed as against plaintiffs.

Under articles 3429, 3495 C. C., and under the authority of Dumford *v.* Clark's estate, 3 L. 199, the plaintiffs contend that they can not only oppose to the defendants' executory proceedings the prescription which they have pleaded, but that they really occupy a better position in this regard than the maker of the notes, Charles Pipes.

They compare their position in reference to the pledge to that of a third possessor in reference to the mortgage creditor, illustrating it thus: A subscribes a mortgage on real estate to B, which is duly recorded. A afterwards sells the property to C, and the certificate of mortgage on the day of sale discloses the incumbrance in favor of B. B, the holder of A's note and mortgage, suffers ten years to elapse

without reinscribing his mortgage; although, as between themselves, A may not be able to plead the prescription of the mortgage against B, do the defendants pretend to deny that C is debarred of the plea?

In reference to this point, made by the plaintiffs, we will say that the position they occupy in this case is not analogous to the example they have given.

If, as judgment creditors of Charles Pipes, they had seized the stock in question, or had acquired any ownership or lien thereon, and the defendants should assert a privilege resulting from the pledge, then their position would be analogous to that of a third possessor to a mortgage creditor who had never recorded his mortgage or who had permitted the effect of registry to be lost by failing to reinscribe it within ten years. The pledger could not, in the case we have given, take advantage of the want of written recorded evidence of the pledge, but a third person having acquired a right to the thing pledged, might do so. Now, the plaintiffs in this case do not claim that they have an ownership or privilege on the certificates of stock with which the defendants' pledge interferes. The contestation is not concerning the stock, or whether the contract of pledge, under which the defendants hold, has been so evidenced or registered as to protect the privilege of the defendants thereon from any adverse lien or claim of third persons thereto. The question is: Have the notes of Charles Pipes, secured by mortgage on the land now owned by the defendants, become barred by the prescription of five years? If the principal obligation be extinguished by prescription, of course the mortgage, its accessory (in which the plaintiffs are mainly interested), is also discharged. The plaintiffs, being interested, can make the plea which Charles Pipes himself could make; but they certainly occupy no position superior to him in this regard. Barrow v. Bank of Louisiana, 2 An. 453. Then, as between Charles Pipes and the Citizens' Bank, the inquiry is, has there existed the relation of pledger and pledgee, or has the latter held the property of the former in possession, by consent, as security for the debt? If so, there has been a tacit interruption of prescription; the debtor consenting to the possession of his property by his creditor, as security, tacitly acknowledges the existence of the debt.

There is no force in the position that there was no pledge because the certificates were not delivered by the bank to Charles Pipes, and therefore, not having them in corporeal possession, he could not pledge them to the bank by making a delivery. There may be a constructive as well as an actual or corporeal delivery.

The moment Charles Pipes consented that the bank might retain his certificates of stock, already in possession of the latter, as a pledge for the loan, he made the constructive delivery, and the contract of pledge was completed, as between them, as fully as if evidenced by a notarial act.

Now, what was the contract between the Citizens' Bank and its stockholder, Charles Pipes? The contract was made under.the charter of the bank, and the provisions of that charter were a part and parcel of that contract as effectually as if incorporated in the body of the agreement.

The eleventh section of the charter provides as follows: "That every stockholder in the said corporation, on depositing and pledging his certificate of stock, *shall be entitled to a credit* of one-half of the total amount of his stock, provided, that in proportion said stockholder shall use his credit he shall give his notes or obligations," etc.

The notes secured by mortgage, the enforcement of which the plaintiffs enjoin, evidence the use of his credit by Charles Pipes, as stockholder.

Under the provisions of the charter adverted to, Charles Pipes obtained the loan from the bank, to secure which the mortgage was given; that provision required him to deposit and pledge with the bank his certificates of stock to entitle him to a loan. That provision was part of his contract. He virtually contracted with the bank to obtain a loan on the deposit and pledge of his stock. He got the loan, and the bank retained the certificates of stock belonging to him.

Possession of the certificates by the bank, under such a stipulation in the agreement, is strong presumptive evidence that the same was pledged to the bank. But there is a stipulation in the mortgage that, upon a certain contingency, the bank may not only foreclose the mortgage, but may also sell ·the stock. How could the bank be authorized to sell the stock to pay the debt, unless the debtor understood that he had pledged it to the bank to secure the same? Add to this the evidence of the officers of the bank, which here, we will remark, was perfectly admissible, and there can be no doubt that, since the execution of the notes and mortgage under consideration, in 1839, the certificates of stock of Charles Pipes have remained in pledge to the Citizens' Bank. Having possession of their debtor's property by his consent, as security for the debt, there has been a standing acknowledgment thereof on his part, and no prescription has been acquired. 21 An. 128, 1 Rob. 556, 8 R. 146.

It is therefore ordered that the judgment appealed from be affirmed, with costs.