DOMENGEAUX, Judge.
Plaintiff-appellee, St. Landry Bank and Trust Company, filed suit on three promissory notes, each secured by separate, properly recorded Acts of Special Mortgage on subdivision lots situated in St. Landry Parish, Louisiana, and executed by defendants-appellees, Hal D. McBee and his wife, Marilyn Sliman McBee. The first note and mortgage is dated November 20, 1969, and is in the amount of $28,000.00; the second note and mortgage is dated March 11, 1970, in the amount of $25,800.00; and the third note and mortgage is dated May 7, 1970, in the amount of $15,000.00; each note is payable to bearer and provides for specific methods and times of payment, and also for interest and attorney’s fees in *156 the event of the employment of an attorney to enforce payment. Alleging default and amicable demand the bank prayed for judgment against the defendants in the unpaid amounts plus interest, attorney’s fees, and costs, and for recognition of its mortgages on the immovable property described in the referred to acts of hypothecation.
Although Mr. and Mrs. McBee filed an answer in the form of a general denial, no serious issue is made of the legality of the three notes and mortgages, nor of the fact that they are due and exigible.
An intervention was filed by Mrs. Florence Joseph Sliman, the mother of Mrs. McBee, alleging the following:
(1) That she had previously sold the mortgaged lots to her daughter and Mr. McBee by deed dated March 28, 1968, and recorded in the Conveyance Records of St. Landry Parish, Louisiana, for the sum of $78,000.00. Of said amount the sum of $5,000.00 was paid in cash and for the remainder the purchasers executed four promissory notes, each dated March 28, 1968. The first was in the amount of $15,000.00, payable May 1, 1969, the second in the amount of $18,000.00, payable on May 1, 1970, the third in the amount of $20,000.00, payable on May 1, 1971, and the fourth in the amount of $20,000.00, payable on May 1, 1972. (The deed was not recorded' in the mortgage records.)
(2) That the McBees defaulted in their payments and consequently she filed suit against them to cancel the sale referred to.
(3) That although said suit was compromised and dismissed, balances remain due on the notes. (The written compromise agreement was recorded in both the Conveyance and Mortgage Records.)
(4) That as a result she is entitled to a lien or privilege on the property described and also to judgment against Mr. and Mrs. McBee for said unpaid balance.
(5)And finally, that said vendor’s lien for the unpaid purchase price is superior in rank to the three mortgages held by the plaintiff bank.
The trial judge granted judgment in favor of the plaintiff bank against Mr. and Mrs. McBee, in the amounts sued for, and recognized its mortgages on the parcels of ground in question; he also granted judgment in favor of the intervenor, Mrs. Florence Joseph Sliman, against Mr. and Mrs. McBee, in the amounts which intervenor sued for; he further held that the bank was entitled to a preference and first mortgage over the intervenor on the property described; finally the judge ruled that the intervenor was intitled to no privilege or lien other than from the judicial mortgage granted in her favor by that judgment.
The intervenor has appealed, and the only issue before the court is whether said intervenor, Florence Joseph Sliman, has a valid vendor’s lien under LSA-C.C. 3249, and if so, whether same outranks the mortgages held by the St. Landry Bank and Trust Company.
A review of the record shows that the sale under which Mrs. Sliman claims a vendor’s lien is on a cash sale form, with no mortgage provisions, and the consideration for the sale is set out as follows:
“This sale is made for and in consideration of the price and sum of Seventy-eight Thousand & no/100 ($78,000.00) Dollars, in part payment and deduction whereof the purchasers have paid to the vendor the sum of Five Thousand Dollars ($5,000.00), receipt of which is acknowledged and for the balance of said purchase price said purchasers have executed their four (4) certain promissory notes, dated the same date hereof, in the amounts and payable as follows: Note No. 1 for $15,000.00, due May 1, 1969; *157 Note No. 2 for $18,000.00, due May 1, 1970; Note No. 3 for $20,000.00 due May 1, 1971; Note No. 4 for $20,000.00 due May 1, 1972, all bearing interest at the rate of seven per cent (7%) per an-num from maturity until paid, and all par-aphed ‘ne varietur’ for identification with this act of sale by me, Notary.”
The act of sale also provides as follows:
“It is agreed between the parties that the notes hereinabove described shall be and remain the personal obligation of the makers and their heirs, but no lien shall exist on the lots herein sold securing payment of said notes.”
It is evident from the above provision that the intervenor expressly renounced her vendor’s lien to secure payment of the notes. It is also evident from a reading of the provision that it was the intention of the parties that the obligation of the Mc-Bees would remain a personal obligation and no more. In State Ex Rel. Landry v. Broussard, La.App., 177 So. 403 (1937) it was recognized that a vendor’s lien and a special mortgage may co-exist on the same property and that one can be renounced or extinguished without affecting the other. The Louisiana Supreme Court in the case of Nathan v. Gardere, 11 La. 262, held that where a vendor expressly renounced his privilege and mortgage in the act of sale, and takes notes for the price of the thing sold, neither he, nor those subrogated to his rights against the common debtor, could exercise any privilege or mortgage in case of non-payments of the notes.
It is further shown in the record that the intervenor’s suit for cancellation of the above referred to sale by reason of default in payments, was compromised and dismissed with full prejudice. Thus, the alleged claim for the vendor’s lien and the claim for rescission of the sale were also dismissed. In connection with the dismissal, the parties entered into a compromise agreement which as mentioned heretofore was recorded in both the mortgage and conveyance records. The compromise agreement, after recognizing that the McBees had discharged their obligation under the first note referred to in the deed dated March 28, 1968, sets out a method or schedule under which the McBees would pay Mrs. Sliman for the remainder of the indebtedness as certain lots were sold, and further provided as follows:
“All parties declare and acknowledge that with the exception of the hereina-bove referred to notes, number 2, 3 and 4, that any and all of the indebtednesses which may exist by either party to the other and any and all claims of every kind which either party may have against the other is hereby compromised and settled and that neither party will make any claim against the other party for any matter or thing which may have arisen or happened prior to the execution of this agreement.”
The intervenor asserts the proposition that the recorded compromise agreement provides a vendor’s lien or privilege in her favor under LSA-C.C. 3249. In this we cannot agree. It is to be remembered that the initial deed under which the property was sold specifically waived or renounced all rights to a vendor’s lien. Nowhere in the compromise agreement is there any suggestion that the previously waived vendor’s lien was to be reinstituted or revitalized. Actually, all the instrument really accomplishes is to set out a schedule for future payments as the lots are sold.
In that we cannot agree that the compromise agreement provides a vendor’s lien in favor of the intervenor, the fact of its recordation is merely solicitous and of no legal efficacy insofar as it may affect the rights of the plaintiff bank herein under its mortgage rights.
We readily conclude from a perusal of the sale involved, the judgment of dismissal referred to, the subsequent compromise agreement, and the testimony adduced at trial that the parties did not intend that *158 Mrs. Sliman retain a vendor s lien. In fact, said lien had been expressly waived.
For the above and foregoing reasons the judgment of the District Court is affirmed. Costs of this appeal are assessed to inter-venor-appellant.
Affirmed.