KLIEBERT, Judge.
The defendants, Beryl Melendy, wife of/and Edward H. Keiler, bring this devol-utive appeal from a deficiency judgment in favor of the plaintiff, Century Bank, rendered by the Twenty-fourth Judicial District Court, Parish of Jefferson, following a sheriff’s sale of plaintiff’s property in an executory proceeding filed under docket No. 255-444. On appeal, defendants contend the trial court erred in granting a deficiency judgment because of improprieties in the executory process and in using executory process to collect a vendor’s lien, coupled with errors in the distribution of the sale proceeds to Century Bank as an assignee of the person holding an alleged invalid vendor’s lien. For the reasons which follow, we affirm the trial court’s judgment.
At the trial of the deficiency judgment claim, Century Bank introduced numerous documents and court records to support its deficiency claim. Hence, a somewhat detailed examination and discussion of these *330 documents is necessary to appreciate the posture of the case before this Court.
Century Bank was the holder of defendant’s promissory note (hand note) in the amount of $95,000.00, dated January 28, 1981, secured by pledge of a demand mortgage note in the amount of $100,000.00 dated January 28, 1981. The demand mortgage note is paraphed “Ne Varietur” with a collateral mortgage, dated January 28, 1981 on the property which was the subject of the foreclosure here. When the defendants defaulted in payment, Century Bank, on July 7, 1981, instituted foreclosure proceedings under Docket No. 255-444 of the Twenty-fourth Judicial District Court. The court granted executory process and as a result a writ of seizure and sale issued. The sheriff of Jefferson Parish seized the property and held a public sale with benefit of appraisal. At the public sale the property was adjudicated to Century Bank for $108,000.00.
According to the sheriffs process verbal of the public sale, the proceeds were disbursed as follows: $3,798.82 to the sheriff of Jefferson Parish as cost and commission; $33,378.03 to Century Bank in payment of the claims it acquired by assignment from Miriam M. Ferris, wife of/and Christopher Ferris, the original vendors of the property, to the defendants herein, and the balance of $70,823.15 to Century Bank to be applied to its outstanding debt due on the January 28, 1981 demand note held by the bank.
The defenses to the deficiency judgments urged by defendants arise out of the application of $33,378.03 of the sale proceeds to Century Bank for the claims obtained under the assignment from the Ferrises rather than to the principal and interest due on the defendants’ January 28, 1981 notes held by the bank.
The vendor’s lien to which the $33,378.03 was applied originated out of a credit sale of the property by Miriam Ferris, wife of/and Christopher Ferris to the defendants here, dated December 30, 1976. For some reason, unexplained by the record, in addition to an act of credit sale and the execution of a $44,000.00 note representing the balance due on the purchase price, the defendants on the same date executed an additional $44,000.00 demand note and a separate $44,000.00 mortgage on the property. One of the $44,000.00 notes was par-aphed to the mortgage; the other had no paraph. Sometime thereafter, the separate mortgage securing the $44,000.00 note was cancelled.
Subsequently a foreclosure by executory process was initiated under Docket No. 254-225 by the Ferrises on the $44,000.00 notes. The Keilers filed a petition seeking to enjoin the executory process for lack of authentic evidence. On July 7, 1981, before the foreclosure action under Docket No. 254-225 was consumated, the Ferrises assigned to Century Bank by notarial act the $44,000.00 note and the vendor’s lien created by the Act of Credit Sale together with the Ferrises rights in the foreclosure proceeding initiated under Docket No. 254-225.
The defendants’ contention of improprieties in the foreclosure here are the same as those he alleged in his initial petition for injunction under Docket No. 254-225. The record, however, shows Century Bank’s foreclosure brought under Docket No. 255-444 was predicated on the $100,000.00 note secured by collateral mortgage, both dated January 28, 1981, held by Century Bank.
In Reed v. Meaux, 292 So.2d 557 (La.1973) our Supreme Court held that where one of three mortgages was sufficient to support the grant of executory process the others were mere surplusage and their deficiency had no effect on the executory proceeding. Hence, any improprieties between the $44,000.00 notes, the act of credit sale and/or the separate $44,-000.00 mortgage are irrelevant to the exec-utory process granted by the bank in its foreclosure initiated by the bank on the defendants’ $100,000.00 note secured by collateral mortgage on the property foreclosed on. Therefore, defendants’ contentions as to the invalidity of the executory process predicated on inconsistency in the *331 $44,000.00 notes and/or mortgage are without merit.
We next consider the defendants’ contention there was an unlawful use of executo-ry process to collect a vendor’s lien.
Contrary to the defendants’ contention, the vendor’s lien was not the lien being enforced via executory process, hence, any want of authentication was not fatal to the action for executory process. The vendor’s lien was a mere surplusage to the principal action to enforce the collateral mortgage. Reed v. Meaux, supra. Hence, defendants’ contentions in this regard are without merit.
We now consider the alleged inconsistencies in the $44,000.00 notes, act of credit sale and separate mortgage as it may affect the computation of the deficiency claim.
In its petition for a deficiency judgment the bank alleged an entitlement to a deficiency of $64,318.41 computed as follows:
Principal $ 95,000.00
Interest 13,113.25
Attorney Fees 27,028.31
Total 135,141.56
Less Proceeds from Sale 70,823.15
Balance Due $ 64,318.41
The defendants contend the application of the $33,378.03 to the payment of the vendor’s lien was an impropriety which bars recovery on the deficiency claim because it constituted the unlawful use of executory process to enforce a vendor’s lien. They further contend the vendor's lien was invalid. The exact basis urged by the defendants is not clear; but, the essence of his contentions stems out of the inconsistencies and confusions between the $44,000.00 notes originally executed by the defendants and secured by the vendor’s lien and/or the separate act of mortgage.
In an effort to clarify the inconsistencies, the testimony of the notary who confected the notes, the act of credit sale and the separate mortgage were introduced in evidence. The notary testified that in March 1977 the defendants sought to cancel the separate mortgage securing one of the $44,000.00 notes because there was no consideration for the note. The recorder of mortgages for the parish refused to cancel the mortgage without a notarial release of the mortgage. Consequently, on March 30, 1977, the parties executed a partial release of mortgage which cancelled the $44,000.00 mortgage and which also recognized and reserved the vendor’s lien contained in the act of credit sale. At the same time, the notary redated the unparaphed noté of December 30, 1976 to read March 30, 1977 to coincide with the date of the partial release of mortgage, but he failed to paraph the $44,000.00 redated note with either the act of credit sale or the partial release. During the course of the hearing on the deficiency claim, the trial judge considered the notary’s error in the paraphing of the note to be a clerical error and accordingly permitted the notary to properly paraph the note in open court, pursuant to the provisions of LSA-R.S. 13:4104.
A Louisiana vendor’s lien arises by operation of law as provided by La.C.C. Article 3274. Lessard v. Lessard Acres, Inc., 340 So.2d 351 (1st Cir.1976). A vendor’s lien and mortgage may coexist on one and the same property and one may be renounced or cancelled without affecting the other. They are both necessary to the principal obligation or debt and both fall when the obligation or debt falls, but failure of the security does not necessarily cause the debt to fall. State v. Broussard, 177 So. 403 (1st Cir.1937). The cancellation of the mortgage here did not affect the validity of the vendor’s lien because the notarial act (partial release of mortgage) cancelling same specifically reserved the right to enforce the vendor’s lien.
Further, the vendor’s lien primed the mortgage which was the basis for the foreclosure and the executory process. In distributing the proceeds from the sale the sheriff was required to satisfy the vendor’s lien prior to satisfying the mortgage being foreclosed on. Since the vendor’s lien was not the basis for the foreclosure or of the executory proceeding, it was not necessary to prove the amount of the debt (the unpaid *332 portion of the purchase price) by authentic evidence. See Code of Civil Procedure Article 2635.
In the instant case, the public record reflects a credit sale of the property. The sale was evidence of a vendor’s lien and an underlying debt. The defendants did not allege in the trial court or argue here that the debt had been extinguished by any mode. Hence, the holder of the vendor’s lien was entitled to payment regardless of any alleged deficiencies on the note.
The defendants have shown no defects in Century Bank’s collateral mortgage or in the executory process initiated by the bank on the mortgage. Their challenge was limited to alleged inconsistencies in an irrelevant mortgage and/or to the payment of an alleged invalid vendor’s lien with the proceeds from a sheriff’s sale obtained in an executory proceeding. Defendants did not challenge the testimony in this deficiency judgment proceeding which established the balance of the purchase price owed at the time of the assignment of the vendor’s lien to Century Bank. On the other hand, Century Bank has shown the balance of the purchase price was due and secured by a vendor’s lien when assigned to Century Bank. Therefore, in computing the amount of the deficiency claim it was proper to deduct the portion of the sales proceeds used to pay the vendor’s lien.
Code of Civil Procedure Article 2771 sets forth when a deficiency judgment is obtainable as follows:
“The creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the execu-tory proceeding after appraisal in accordance with the provisions of Article 2723.”
Century Bank has met those requirements and hence is entitled to the deficiency judgment.
Accordingly, the judgment of the trial court is affirmed. Appellant to pay all costs.
AFFIRMED.